## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

J & J SPORTS PRODUCTIONS, INC.,

        Plaintiff,

v.                                                            ACTION NO. 4:13cv31

WING BISTRO LLC,

and

THE WING SPOT CHICKEN & WAFFLES, INC.,

        Defendants.

### REPORT & RECOMMENDATION

This matter comes before the Court for entry of judgment of default in favor of the plaintiff, J & J Productions, Inc., and against the defendants, Wing Bistro LLC, and The Wing Spot Chicken & Waffles (d/b/a The Wing Spot). The plaintiff filed a Motion for Default Judgment on July 23, 2013. ECF No. 10. The defendants did not respond within the proper time for a response, making the Motion ripe for a decision. The Motion was referred to the undersigned on August 12, 2013. ECF No. 13. Based on the filings in this case, the undersigned RECOMMENDS that the plaintiff's motion be GRANTED and damages be awarded.

### I. PROCEDURAL HISTORY

The plaintiff filed this suit on March 6, 2013, against the named defendants and John Doe. ECF No. 1. The lawsuit alleges violations of the Federal Communications Act of 1934, as amended in 47 U.S.C. §§ 553, 605 (2013).

On April 15, 2013, a copy of the summons and complaint was posted at the respective

addresses of the registered agents of Wing Bistro and The Wing Spot Chicken & Waffles, Inc. ECF No. 4. On June 24, 2013, the Plaintiff requested an entry of default against the defendants as the defendants' time to answer the complaint had run. ECF No. 10. The Clerk of this Court submitted an Entry of Default as to the defendants on June 25, 2013. ECF No. 8.

On July 8, 2013, the Court issued a Show Cause Order as to defendant John Doe, because it appeared that the Complaint had not been served on him within the prescribed 120 days. ECF No. 9. Defendant John Doe was terminated from the case on July 31, 2013, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. ECF No. 12. Plaintiff's Motion for Default Judgment was filed on July 23, 2013, and based on the lack of a response by the defendants, the Motion is ripe.

## II. JURISDICTION AND VENUE

Based on the facts of this case, the Court holds both subject matter jurisdiction over the case and personal jurisdiction over the defendant. Similarly, venue is proper.

**(a) Subject Matter Jurisdiction**

A federal district court has subject matter jurisdiction over claims that arise under federal law. *See* 28 U.S.C. § 1331 (2012). The plaintiff's claims arise from Section 705 of the Communications Act of 1934, as amended in 47 U.S.C. §§ 553 and 605. *See* Compl. ¶ 1. Because the plaintiff's claims arise under a federal statute, this Court holds proper subject matter jurisdiction.

**(b) Personal Jurisdiction**

Personal jurisdiction over a defendant is established when a defendant has sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1941)), and when the defendant is subject to the personal jurisdiction of the courts of general jurisdiction of the forum state. *See* Fed. R. Civ. P. 4(k)(1)(A). Additionally, there must be "effective service of process" to provide this Court with personal jurisdiction. *See Int'l Shoe Co.*, 326 U.S. at 316-17.

There is no doubt that the statutory and constitutional requirements for personal jurisdiction are satisfied; the defendants are commercial businesses with their principal places of business located in Hampton, Virginia.[1] *See* Compl. ¶ 5. A business within the state clearly has sufficient minimum contacts with the forum state, and that business is subject to the jurisdiction of the courts of Virginia under Code of Virginia § 8.01-328.1.

**(c) Service of Process**

The remaining question is whether there was effective service of process on the defendants. It is well settled that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The notice must be of a nature as to "reasonably convey the required information." *Id.* In other words, "the method of notice 'must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.'" *Teksystems, Inc. v. Khan*, 273 F. App'x 248, 249-50 (4th Cir. 2008) (quoting *Mullane,* 339 U.S. at 315). Here, service was reasonably calculated to convey the information to the defendants and was therefore proper.

The Federal Rules of Civil Procedure provide that service of process can be made on corporations by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or service is made" and "by

---

[1] The event giving rise to this suit occurred at "The Wing Spot," located at 2274 Executive Drive, Hampton, Virginia 23666. The location is now occupied by "Wing Bistro."

delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(1) & 4(h)(1).

After three failed attempts for personal service on the registered agents at their registered addresses, the Complaint and Summons were delivered by posted service at the addresses of record for the defendants' registered agents on April 15, 2013. ECF No. 4. A Return on Service was filed with the Court on April 29, 2013, certifying that the defendants had been served. ECF No. 4. Further, defendants mailed a copy of the process and filed with the Clerk of this Court a certificate of such mailing on June 26, 2013. ECF No. 8.

By posting service of process at the registered address of the registered agent, the plaintiff attempted to follow a method allowed by Virginia statute for service on individuals, not on corporations. Section 8.01-299 of the Code of Virginia allows for service on a Virginia corporation by "personal service of any officer, director, or registered agent." For service on individuals, if no persons qualified to receive service of process are present at the usual place of abode, substituted service may be effected "by posting a copy of such process at the front door or at such other door as appears to be the main entrance of such place of abode." Va. Code § 8.01-296(2)(b) (2013). Posted service is proper for individuals "provided that not less than 10 days before judgment by default may be entered, the party causing service or his attorney or agent mails to the party served a copy of such process and thereafter files in the office of the clerk of the court a certificate of such mailing." *Id.* Plaintiff mailed a copy of the process to the defendants and filed a certificate of mailing with the clerk of this Court. ECF No. 8.

Though the process server utilized the posted service provision allowed for service on individuals, nothing proscribes that method of service on agents of corporations. The statute for

4

service on corporations makes the clerk of the State Corporation Commission an agent in the event the registered agent cannot be found with reasonable diligence. Va. Code Ann. § 13.1-637(B) (West). However, it also provides that "[t]his section does not prescribe the only means, or necessarily the required means, of serving a corporation." § 13.1-637(C).

The process server made three attempts at personal service at the registered agents' addresses and ultimately adopted a method that would reasonably convey the desired information. Therefore, service of process and notice were sufficient under all of the circumstance to apprise the defendants of the pendency of this action.

**(d) Venue**

Venue is proper under 28 U.S.C. § 1391(b)(1)-(2) because the defendant restaurant is located in Hampton, Virginia, which is within the Eastern District of Virginia, and substantially all of the events giving rise to the claim occurred in this district. *See* Compl.¶ 3. ECF No. 1.

### III. FINDINGS OF FACT

1. The Plaintiff entered into a licensing agreement with a distributor to promote an exhibition titled "Relentless: Miguel Cotto v. Richard Mayorga, WBA Super World Light Middleweight Championship Fight Program" (hereinafter "Exhibition"); the agreement provided that the plaintiff would hold the exclusive right to license the Exhibition to commercial establishments throughout Virginia. Compl. ¶¶ 6-8, ECF No. 1.

2. For a commercial establishment to show the Exhibition, the establishment had to enter into a sublicensing agreement with the plaintiff. Compl. ¶¶ 8-9.

3. If a commercial establishment paid the sublicense fee to the plaintiff, then the establishment would receive the proper equipment and/or codes to receive the Exhibition

via satellite or other similar means. Compl. ¶¶ 11-12.

4. The Exhibition occurred on March 12, 2011. Compl. ¶ 6.

5. The defendant restaurant is a commercial establishment; the plaintiff's exclusive right to license the exhibition would apply to the presentation of the Exhibition. Compl. ¶¶ 5, 7-8, & 11.

6. The defendants did not sign a sublicense agreement with the plaintiff and did not pay the sublicense fee. Compl. ¶ 17.

7. The defendants nevertheless presented the Exhibition to its patrons on every television in the establishment. *See* Dickerson Aff., ECF No. 11-1.

8. Approximately fourteen (14) people were present at the defendant restaurant watching the Exhibition on March 12, 2011. *Id.*

9. The minimum fee for a commercial establishment to legally access the closed-circuit broadcast was $1200 for up to 100 patrons and $12 per person thereafter. Based upon the number of patrons in the establishment, the appropriate sublicense fee would have been $1200. *See* Pl.'s Mem. in Supp. of Mot. for Default J., Ex. C (ECF No. 11).

### IV. DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure requires an entry of default against a defendant who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." The Clerk properly entered a default against the defendant in this case as the defendant failed to respond to the complaint within the twenty-one days allowed by Rule 12 of the Federal Rules of Civil Procedure. ECF No. 7.

Although grounds for default judgment against defendants exist, the Court must nevertheless determine whether Plaintiff's complaint states a claim upon which relief can be

granted. *See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians,* 155 F.3d 500, 506 (4th Cir.1998) (holding that district court erred in granting default judgment to plaintiff where plaintiff failed to state a claim); *GlobalSantaFe Corp.,* 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default . . . the appropriate inquiry is whether the facts alleged [in the complaint] state a claim."). Rule 8 of the Federal Rules requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court "must accept the facts alleged in a complaint as true and construe them in the light most favorable to the plaintiff," *Coleman v. Md. App.,* 626 F.3d 187, 188 (4th Cir. 2010). However, threadbare "legal conclusion[s] . . . [are] not entitled to the assumption of truth." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Moreover, the well-pleaded facts of a complaint must permit the court to infer the plausibility rather than the mere possibility of misconduct entitling the plaintiff to relief. *Id.; Coleman,* 626 F.3d at 190; *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009). Because defendants failed to contest Plaintiff's factual allegations, the Court accepts the above well-pleaded facts as true. *See GlobalSantaFe Corp.,* 250 F. Supp. 2d at 612 n.3.

The plaintiff alleges claims based on the defendant violating 47 U.S.C. § 553 (Count I) and the defendant violating 47 U.S.C. § 605 (Count II). Both § 553 and § 605 permit an aggrieved party to bring suit against the violator in federal court. 47 U.S.C. §§ 553(c)(1), 605(e)(3)(A). Section 553 provides in relevant part:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1).

Section 605 provides in relevant part:

> No person not being authorized by the sender shall intercept any radio

> communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Although § 605(a) refers to radio communication, Congress brought satellite communications and cable television services within the purview of the section when it added subsections (b)-(e). *See* 47 U.S.C. § 605(b)-(e); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 911–912 (6th Cir. 2001) (discussing legislative history of § 605).

Based on the factual allegations in the complaint, the plaintiff states a well-pleaded claim. The plaintiff alleges that the defendant restaurant broadcasted the Exhibition to its patrons on all of its televisions and did so without a proper license. To obtain the broadcast signal for the Exhibition, the defendant had to intercept a cable and/or satellite communication. The act of intercepting cable and/or satellite communications and broadcasting that signal to its patrons without a license is a violation of both § 553 and § 605. The plaintiff has made a well-pleaded complaint and the Court RECOMMENDS default judgment be entered.

## V. RELIEF TO BE GRANTED

Default Judgment does not automatically grant the relief sought in the Complaint, but the relief granted cannot exceed the amount demanded in the pleadings. *See* Fed. R. Civ. P. 54(c). In the complaint, the plaintiff seeks up to $60,000.00 for Count I (the violation of § 553), or alternatively, $110,000.00 for Count II (the violation of § 605).

Sections 553 and 605 both permit statutory damages up to $10,000.00 and recovery of

costs and expenses, including reasonable attorney's fees. 47 U.S.C. §§ 553(c), 605(e). However, § 553 provides for additional damages of up to $50,000.00 for willful violations of the section, whereas § 605 allows additional damages of up to $100,000.00 for willful violations. 47 U.S.C. §§ 553(c)(3)(B), 605(e)(3)(C)(ii). The plaintiff, however, may only recover under one section. *See e.g., Kingvision Pay–Per–View, Ltd. v. Gutierrez*, 544 F.Supp. 2d 1179, 1184 (D. Co. 2008); *J & J Sports Productions, Inc. v. Buruca Brother's Va., Inc.*, Civil Action No. 1:10cv1371, 2011 WL 5873078, at *5 (E.D. Va. Aug. 26, 2011). The plaintiff does not specify under which section it would like to recover in either the Complaint or in the Memorandum in Support of its Motion for Summary Judgment.

The plaintiff merely requests the full amount of statutory and enhanced damages allowed under each section. Compl. at 5-6 & 7-8. The language in Section 605 prohibits publishing the contents of the communication. Section 503 only proscribes the act of interception. The defendants in this case published the Exhibition on every television in the establishment. Further, other courts have held that "[e]ven if a proper claim were made under section 553, where defendants have defaulted and courts have found liability under both section 605 and section 553, damages are usually awarded only under section 605." *Joe Hand Promotions, Inc. v. Coaches Sports Bar*, 812 F. Supp. 2d 702, 704 (E.D.N.C. 2011). Therefore, the Court deems Section 605 proper for recovery under the present facts.

    **(a) Statutory Damages**

Section 605 allows the plaintiff to recover either actual damages suffered or statutory damages for each violation "in a sum not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. 605(e)(3)(C)(i)(I)-(II). In determining the amount of damages that can be imposed for each violation, § 605 leaves the decision within the sound discretion of the court.

*See* 47 U.S.C. § 605(e)(3)(C)(i)(II) (including the language that the aggrieved party may receive damages as the "court considers just"). Plaintiff seeks an award of $10,000 in statutory damages, rather than an award based on actual damages.

The plaintiff argues that it is nearly impossible to ascertain the full extent of profits lost by plaintiff, loss of goodwill and the additional damages sustained by plaintiff. Gagliardi Aff. ¶¶ 11-13 (ECF No. 11-1). The plaintiff relies on the difficulty to fully access damages from the illegal broadcast of the Exhibition for why the Court should, in its discretion, award statutory damages. *Id.*

The Court agrees with the plaintiff that it would be difficult to completely assess the damages suffered as the result of the defendant's unlawful broadcast of the Exhibition. The only concrete damages that are known in this case are the sublicense fees, which the defendant failed to pay to the plaintiff for the right to broadcast the event. The defendant restaurant would have had to pay the minimum $1200 for the sublicense fee to broadcast the Exhibition. Gagliardi Aff., Ex. 1 (ECF No. 11-1 at 10).

That amount, however, does not take into account the difficulty of detecting and deterring these types of violations. The plaintiff in this case had to "at considerable expense" retain "auditors and law enforcement personnel to detect and identify signal pirates." Gagliardi Aff. ¶ 6, ECF No. 11-1. This type of piracy is costly to enforce. A commercial establishment will be deterred from illegally intercepting signals of this type if the penalty for intercepting the feed is substantial.

Further, the defendant restaurant presumably received some profit from showing the Exhibition to its patrons. On the night of the Exhibition, the defendant restaurant showed the Exhibition on all six of its large screen televisions. Dickerson Aff. (ECF No. 11-1). The

plaintiff's auditor counted nine, fourteen, and fourteen patrons present at various times during the Exhibition. *Id.* It is reasonable to believe that one reason that the defendant restaurant broadcast the Exhibition was to increase sales and profits.

Courts in this district have employed two methods to determine damages under this section. One option is to use a flat amount, determined by the court based on the sublicense fee that was not paid, and another is to use a per patron rate. *Compare Joe Hand Promotions, Inc. v. Citibars, Inc.*, Civil Action No. 2:11cv58, 2012 WL 503212, at *5 (E.D. Va. Feb. 8, 2012) *and Joe Hand Promotions, Inc. v. Veltsista, LLC*, Civil Action No. 1:10cv1442, 2011 WL 5826059, at *2 (E.D. Va. Oct. 21, 2011) (both utilizing the per patron method) *with J & J Sports Prods., Inc. v. Lara Sport House Corp.*, Civil Action No. 1:10cv1369, 2011 WL 4345114, at *6 (E.D. Va. Aug. 26, 2011) (applying a flat fee where a calculation based on the number of patrons would be an insufficient deterrent). The accepted fee assessment in this District is $100 per patron. See, e.g., *Citibars,* 2012 WL 503212, at *5; *Veltsistas,* 2011 WL 5826059, at *2. A calculation based on the number of patrons in this case would only nominally surpass the actual sublicense fee. It certainly would not be a sufficient deterrent.

The Court finds the flat rate method proper in this instance. In light of the facts of this case, a statutory damage award of four times the license fee ($1,200), when combined with the enhanced damages below and the attorney's fees, is a sufficient deterrent. *See Joe Hand Promotions, Inc. v. Jimmagan's Inlet. Inc.,* 2010 WL 5141768 (D.S.C. Oct. 1, 2010) (awarding statutory damages of five times the license fee for the program). Therefore, the Court RECOMMENDS that the plaintiff be awarded $5,000 in statutory damages.

**(b) Willful Damages**

Plaintiff is entitled to a further enhancement because the violation was willful and done with the purpose of profiting commercially. *See* 47 U.S.C. § 605(e)(3)(C)(ii). Section 605 allows the Court to award up to $100,000 in additional damages when a defendant violates the section "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The plaintiff seeks additional damages in the sum of $100,000 against the defendants in this case. *See* Pl.'s Compl. at 8.

In order to access the telecast, it would have been necessary to use an unauthorized decoder or other illegal interception method. The plaintiff asserts that the transmission signal "cannot be mistakenly, innocently, or accidentally intercepted." Gagliardi Aff. ¶ 9, ECF No. 11-1. Additionally, this district is in agreement that "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *See, e.g., Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 668 (E.D. Va. 2013) (quoting *Time Warner Cable v. Googies Luncheonette*, 77 F. Supp. 2d 486, 490 (S.D.N.Y 1999)). Additionally, "intercepting an encrypted broadcast is not done by accident, but requires an affirmative action by the defendant." *Wing Spot Chicken & Waffles*, 920 F. Supp. 2d at 668. Very simply, the Court finds that the defendant took willful action to unlawfully intercept and broadcast the Exhibition.

Further, the Court finds that this willful act was done for either "direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The defendant restaurant is a commercial establishment, and on the night of the Exhibition hosted approximately fourteen patrons, who were able to enjoy the Exhibition at no cost to the defendant restaurant. Each of the restaurant's six televisions showed the Exhibition. Dickerson

Aff. (ECF No. 11-1 at 11). Because the defendant showed the Exhibition on all of its televisions at no cost, the Court concludes that the defendant acted willfully for commercial advantage and private financial gain.

Additional damages awarded under § 605 have varied tremendously in this district. *See, e.g.*, *J & J Sports Prods., Inc. v. Bougie, Inc.*, Civil Action No. 1:10cv01374, 2011 WL 6202909, at *7 (E.D. Va. Nov. 25, 2011) ($35,000.00); *J & J Sports Prods., Inc. v. Ricos Tacos Moya Restaurant, Inc.*, Civil Action No. 1:10cv1368, 2011 WL 6100286, at *6 (E.D. Va. Nov. 21, 2011) ($20,000.00); *Integrated Sports Media, Inc. v. Buruca Brother's Va., Inc.*, Civil Action No. 1:11cv839, 2011 WL 5873078, at *7 (E.D. Va. Nov. 1, 2011) ($2,000.00); *Veltsistas*, 2011 WL 5826059, at *3 ($5,000.00); *J & J Sports Prods., Inc. v. Great Latin Restaurants, L.C.*, Civil Action No. 1:11cv459, 2011 WL 5873071, at *6 (E.D. Va. Sept. 15, 2011) ($100,000.00). Other courts when determining these additional damages have considered factors "such as allegations of: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks." *Kingvision Pay–Per–View v. Rodriguez,* 2003 U.S. Dist. LEXIS 2674, at *2 (S.D.N.Y. Feb. 24, 2003); *see also Joe Hand Promotions, Inc., v. Bougie, Inc.*, 2010 WL 1790973, at *6 (E.D. Va. April 12, 2010).

Based on the factors used by other courts, the Court finds that a milder fine is appropriate. The plaintiff does not allege that the defendant is a repeat violator, but the Court has reason to believe otherwise. *See Wing Spot Chicken & Waffles*, 920 F. Supp. 2d at 669 (default judgment against "Wing Spot" under § 605 for almost identical violation). Although Wing Spot can be accurately characterized as a repeat offender, the broadcasts of the two exhibitions

13

occurred within one week of each other. That can hardly be said to be "an extended period of time." Similarly, the plaintiff does not allege substantial financial gain by the defendant. The defendant showed the Exhibition at or near 10:00 p.m. on March 12, 2011, and approximately fourteen patrons were able to enjoy the Exhibition. *See* Dickerson Aff. at 12 (ECF No. 11-1). This no doubt led to some unlawful monetary gain by the defendant, but likely not enough that the financial gain that evening would be considered "substantial." Similarly, the amount of actual damages that can be calculated in this case is $1200, the unpaid sublicense fee. The Court, however, acknowledges that there are additional actual damages to the plaintiff in lost revenue, devaluing the plaintiff's product, and the like. Finally, there is no allegation that the defendant advertised the Exhibition or charged a cover charge or premium for food or drinks that evening.

The Court recognizes the need to deter signal pirates. The Court also agrees with a number of other courts that "although the amount of damages should be an adequate deterrent, [a single] violation is not so serious as to warrant putting the restaurant out of business." *Garden City Boxing Club, Inc. v. Polanco*, No. 05 Civ. 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb 7, 2006); *see also Citibars, Inc.*, 2012 WL 503212, at *6. This District has decided that $10,000 is an adequate deterrent. The court in *Joe Hand Promotions, Inc. v. Bougie, Inc.* held that in light of nominal profits of defendant, "an award of $10,000.00 in enhanced damages should be more than sufficient to deter the Defendant from repeating its conduct." *Joe Hand Promotions, Inc. v. Bougie, Inc.*, Civil Action No. 1:09CV590, 2010 WL 1790883 (E.D. Va. May 3, 2010). Based on the lack of allegations of egregious behavior on the part of the defendant, and the nominal profits to be made on fourteen patrons, the Court finds that $10,000 is an appropriate award in additional damages for the defendants' willful actions.

**(c) Attorneys' Fees**

The plaintiff seeks $2120 in attorneys' fees and $465.55 in costs. Under § 605, the prevailing party can recover full costs and reasonable attorneys' fees. 47 U.S.C. § 605(e) The plaintiff estimates that attorneys' fees for this case are approximately $2120 based on thirteen point eight (13.8) hours of actual and estimated work at an hourly rate of $250. Pl.'s Mem. in Supp. of Mot. for Default J., Ex. B, ¶ 8, ECF No. 11-2. For costs, the plaintiff includes the $350 filing fee, $100.90 for service of process, and $4.65 for office copying. *Id.* at 7.

The Court FINDS that the requests for attorneys' fees and costs are modest and RECOMMENDS that the plaintiff be awarded $2,120 in attorneys' fees and $465.55 in costs.

## VII. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this

court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

                                                                          _____/s/_____

Tommy E. Miller
United States Magistrate Judge

Norfolk, Virginia
November 21, 2013

## CLERK=S MAILING CERTIFICATE

      A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Wing Bistro, LLC
2274 Executive Drive
Hampton, Virginia 23666

Linda Ensley
Registered Agent for Wing Bistro, LLC
3203 Clover Road East
Chesapeake, Virginia 236321

Walter Ricks
Registered Agent for Wing Spot Chicken & Waffles, Inc.
4652 Helensburgh Drive
Chesapeake, Virginia 23321

Mark Dennis Dix, Esq.
Bucci & Dix PLLC
11449 Bobious Road
Richmond, Virginia 23235
(804) 888-9500
Email: mdix@buccidix.com

Michael Scott Bucci, Esq.
Bucci & Dix PLLC
11449 Bobious Road
Richmond, Virginia 23235
(804) 888-9500
Email: sbucci@buccidix.com

Fernando Galindo, Clerk

By _____
Deputy Clerk
November 21, 2013